18 537
47 931

GEORGE W. BRANNER et al. *v.* M. C. HARDY, Sheriff, et al.

A mortgage is in its nature indivisible, and prevails over every part of the immovable subjected to it; and the mortgaged premises must be sold to satisfy the whole debt and not a part thereof.

Where a seizing creditor only sues for such installments of a debt, secured by mortgage, as are due, the property mortgaged must be sold for the whole debt, on such terms of credit as are granted by the original mortgage.

The purchaser of mortgaged property at Sheriff's sale is personally bound for the surplus of the adjudication, and holds the surplus subject to the claim of inferior mortgage creditors, who have for their security a special mortgage of the property sold.

Where the immovable property of a Railroad Corporation is sold, at the instance and suit of the owner of a mortgage bond of the corporation, the interest coupons of which are due, the purchaser at Sheriff's sale must apply the surplus to the payment pro rata of all the matured interest coupons of other bonds of the same grade as the one upon which the seizure and sale was made, which are presented and demanded; if he refuses, it is the duty of the Sheriff to re-offer the property for sale the same day.

APPEAL from the District Court, Parish of Ouachita, *Crawford*, J. *C. M. Conrad & Sons,* and *R. W. & R. Richardson,* for appellant. *J. & R. Ray, Jno. T. Ludling, S. L. Slack,* and *W. J. Q. Baker, F. P. Stubbs,* for appellees.

The facts are stated in the opinion of the Court.

TALIAFERRO, J. By an act of the Legislature of the State of Louisiana, approved on the 11th day of March, A. D. 1852, the Vicksburg, Shreveport and Texas Railroad Company was incorporated, and by the act of in-

48

corporation invested with the power "to borrow from time to time such sums of money as may be required for the construction of the road, over and above the amount received from subscriptions to its capital stock; provided, that the amounts borrowed do not exceed four millions of dollars; and said president and directors be, and are hereby authorized to secure said loans by mortgaging the property of the company, in whole or in part, as they shall deem expedient," etc.

Under the authority conferred upon him by a resolution of the board of directors of the company, passed on the 31st of August, 1857, Charles G. Young, then president of the board, was authorized and instructed to issue two thousand bonds of the company, redeemable in twenty years from the 1st day of September, A. D. 1857, for one thousand dollars, or two hundred and twenty-five pounds sterling, each bearing interest at eight per cent. per annum, payable semi-annually in coupons of forty dollars, or nine pounds sterling each; the principal and interest of said bonds made payable in New Orleans, New York or London, as the president by his endorsement may determine. And he was further authorized, by the resolutions aforesaid, "to secure the payment of said bonds and of the interest thereon, by a first mortgage on the railroad of the company, its lands, property, franchises," etc.

By a notarial act before the Recorder of the Parish of Ouachita, on the 1st of September, A. D. 1857, the president aforesaid declared that he had that day issued two thousand bonds of the said company, in conformity with the power and instructions granted to him, under and by virtue of the resolutions above stated. And he further declared in said act, that "in consideration of the premises, and in order to secure the full, faithful, and punctual payment and redemption of each and all of the said bonds issued as aforesaid, to any and all future holder or holders thereof, and to each and every one of them, when the same shall become due and payable, together with the interest accruing thereon, in the manner and at the periods of time herein above stipulated, and as evidenced by the coupons attached to the said bonds respectively, the said Vicksburg, Shreveport and Texas Railroad Company does, by its president, the said Charles G. Young, grant in favor of John Ray, of the town of Monroe, Parish of Ouachita and State of Louisiana, as well as in favor of all and every other person or persons whosoever, who may become the holders of said bonds or coupons, or any of them, a first mortgage, lien and privilege upon its entire railroad," etc.

In the month of December, A. D. 1865, William R. Gordon, alleging himself to be the owner and holder of four of the bonds of said company, with the interest coupons or warrants attached to the said bonds, and that eighteen of the coupons held by him were due and unpaid, applied for and obtained, on the 23d day of December, 1865, an order of seizure and sale against the entire railroad and all its appurtenances; and, in pursuance of the order, the entire property of the company mortgaged to secure

the payment of the bonds and coupons, or interest warrants, was seized, and after the legal preliminary proceedings, sold by the sheriff of the Parish of Ouachita, at public auction, in the town of Monroe, on the 3d day of February, A. D. 1866.

The plaintiffs in the case now before us, George M. Branner & Co., aver that, at the judicial sale of the Vicksburg, Shreveport and Texas Railroad, with its appendages, etc., made at Monroe, Parish of Ouachita, Louisiana, on the 3d of February, 1866, under an order of seizure and sale rendered in favor of Wm. R. Gordon, the entire property was adjudicated to them, as the last and highest bidders, at the price and sum of $550,000. They further aver that they were ready, at the time of the adjudication, to comply with the terms of sale; that they tendered the cash part of the price to the sheriff, in lawful money of the United States; but that M. C. Hardy, the sheriff, at the instance and request of John T. Ludling and his associates, parties defendants in this case, refused to receive the amount so tendered ; and that said Hardy, sheriff, against the plaintiff's public protest, proceeded again to offer the said property at public sale, and at this second offering adjudicated the property to the said Ludling and his associates, the sole bidders at the second exposure. The plaintiffs bring this action against M. C. Hardy, sheriff, making Ludling & Co. parties, and pray that the adjudication made to Ludling and others, on the 3d of February, 1866, and the proceedings connected with the same, and the deed of sale subsequently made to Ludling and others by the sheriff, be declared null and void; that they be decreed the legal owners of the property; that the sheriff be directed to make a deed of sale of the property to plaintiffs, upon their complying with the terms of the adjudication made to them at the first offering of the property. They claimed damages against the defendants in solido, in the sum of one hundred thousand dollars.

The claim for damages, as well as the reconventional demand of damages set up against the plaintiffs by the defendants in their amended answer, was, subsequently, discontinued.

The defendants severed in their defence. Their answers contain general denials. Ludling & Co. admitted that they became purchasers of the property, and aver that they acquired a legal title to it by virtue of the adjudication and deed to them by the sheriff. Both branches of the case were argued together, and by consent of parties, all the evidence taken on the trial of the case, as to Ludling and his associates, except such portions as were specified, was taken and received on the trial of the case, as to Hardy, sheriff, the other defendant.

It will be proper here to consider an exception, presented at an early stage of the proceedings, in the Court below, by the defendants, Ludling & Co., and by the Court referred to the merits. This exception, in its nature peremptory, embraces four points. We shall notice, however, the only one of these upon which, in argument before this Court, the defen-

dants' counsel seemed to place much stress. It is, that this suit is a petitory action, and the plaintiffs, being without title, can not maintain it. The plaintiffs complain of an alleged injury done them by the sheriff and the other defendants, in preventing them from obtaining a complete title to the property in dispute. The gravamen of their case is that a title was illegally withheld from them. The gist of their action is to obtain that which the defendants contend they are incapable of suing for, because they have no title. The defendant Hardy, sheriff, also excepts to the right of plaintiffs to sue him, on the ground that, having returned the writ under which he sold the property, he is, as to these proceedings, functus officio, and has no further interest in the matter.

We regard the action as one brought against the sheriff, to compel him to make a title to plaintiffs, and to have the adjudication and deed by the sheriff, to Ludling & Co., annulled. We see nothing irregular in the plaintiffs making Ludling & Co. parties, as their rights, under the deed sought to be annulled, are necessarily brought in question. The exception, we think, was not well taken. 12 Rob. 79.

The prominent inquiry in this case is, did Branner & Co., the plaintiffs, comply with the terms of the sale, or did they offer to comply? In order to a proper solution of this inquiry, it is necessary to ascertain clearly what were the terms on which the property was sold. For it appears that, from a disagreement upon this fundamental point, a large amount of the litigation in this case has arisen.

Going back to the commencement of the proceedings, we find that, in his petition for an order of seizure and sale against the railroad company, Gordon, the suing creditor, prays that the entire railroad, etc. "be seized and sold according to law, and in order to pay the interest coupons or warrants now due and unpaid, and the accruing interests and bonds, at their maturity respectively, and that the proceeds of the sale be distributed according to law."

The order of seizure and sale is responsive to the prayer of the petition, but more explicit. It is in these words :

"It is further ordered, adjudged and decreed, that the property mortgaged, and described above and in the mortgage, be seized, and advertised and sold, according to law, to wit: for cash, to pay the interest coupons now due, and on terms of credit to meet the falling due or maturity of the interest coupons and the bonds to mature."

The writ of seizure and sale, and the advertisement, repeat the terms, as expressed in the order of seizure and sale; the advertisement adding that the property would be sold under benefit of appraisement. The sheriff's return upon the writ, made 10th February, 1866, recites the terms as expressed in the various acts, and adds to them the words: "purchaser to give bond and good personal security for the credit portions of the price bid, conditioned according to law."

Afterwards, however, on motion before the District Court, on the 9th

of April following, and on leave obtained of the Court, the sheriff amended his return by striking out the words above, under quotation marks, so that, as the return now stands, the conditions upon which the sale was made are, in every essential particular, expressed in identical language in the original petition of Gordon, the seizing creditor, the order of seizure and sale, the writ, the advertisement, and the sheriff's return. But none of these acts are explicit as to ulterior and important questions that arise after the adjudication to the plaintiffs, on the first offering of the property, and these are : Was the purchaser to retain in his own hands any surplus of the cash portion of the price that might remain, over and above the amount he had to pay to the sheriff for the seizing creditor and for costs ; and also to retain the credit portion to apply to the various coupons and bonds as they severally fall due ; the mortgage subsisting as security for all the unpaid parts of the debt, whether due or running to maturity? Or did the mortgage become extinct by the act of sale, and the purchaser to be required to pay over to the sheriff the whole amount required in cash, and to give bonds with personal security and special mortgage on the property purchased, to secure the payment of the bonds and coupons yet to mature ?

The character of the mortgage given to secure the bonds and coupons, or interest warrants, became the subject of a long and elaborate argument by the able counsel on each side of this case, both orally and by brief. They agree that all the proceedings in the case of *Gordon* v. *The Railroad Company*, up to the time of the adjudication of the property, on the first offering to Branner & Co., the plaintiffs, are regular. They agree that the property seized should be disposed of according to the provisions of the Article 686 of the Code of Practice, but they draw widely different conclusions as to the requirements of that article, when applied to the mortgage given to the bond-holders by the railroad company, to secure the payment of the bonds and the interest warrants attached to them.

After a careful examination of the subject, we arrive at the conclusion. that the mortgage in question assimilates itself to an act of hypothecation made to secure a debt payable in installments; and that proceedings to enforce it should be conducted according to the rules laid down in the case of *Pepper* v. *Dunlap*, 16 L. R. 163. We see no other course which, in. our view, carries out more fully the intentions of the contracting parties, which better secures their rights, and which deals more equitably with all the parties in interest. We are aware that this course, which accords an hypothecary action to enforce the payment of any portion of the debt, however minute, is not free from objections. But arguments ab inconvenienti are not always the most forcible; and we apprehend that, practically, the apparent difficulties in the way are not at all likely to be of frequent occurrence.

This being the course, in our judgment, implied by the general expression "according to law," we find the conditions of the sale to be ; Cash.

to cover all those portions of the entire debt already due, to include as well the interest coupons due and held by parties other than the seizing creditor, as the coupons held by him, and on which he obtained his order of seizure and sale. The purchaser to pay in cash, to the sheriff, the amount due the seizing creditor and costs of proceedings. To retain in his own hands any surplus amount of cash that might remain over and above his payment to the sheriff for the seizing creditor and for costs. And to retain also those portions of the price to be applied to the several parts of the debt not yet due, as they respectively mature. The mortgage subsisting to secure each and every unpaid part of the debt.

We recur now to the inquiry, did Branner & Co. comply with the terms of the sale, or offer to comply with them?

After the property was "knocked off" to Branner & Co. at the sale, it is in evidence that J. T. Ludling presented to the sheriff one hundred and fifty-four of the railroad company's bonds, upon which the interest coupons due amounted to thirty-six thousand three hundred and sixty dollars; and that F. B. Stubbs presented to the sheriff, at the same time, seventy-two interest coupons of the bonds of the company, amounting to twenty-eight hundred and eighty dollars. That the sheriff, at the instance of Ludling and Stubbs, presented the bonds and coupons to Branner & Co., and demanded payment of the coupons then due, amounting, in the whole, to the sum of thirty-nine thousand one hundred and forty dollars. This demand made, as it appears, in the presence and at the instance of the holders of the bonds and coupons, was objected to by Branner & Co., who refused to pay the amounts so demanded, on the ground that they had to pay only the coupons which had been protested for non-payment.

Although the president of the company was authorized to issue two thousand bonds, it appears that, in fact, only seven hundred and sixty-one were issued. At the day of sale, the amount of interest coupons due was one hundred and sixty-eight thousand one hundred and sixty dollars. As the entire debt, then, on the day of sale, largely exceeded the amount bid for the property, the creditors could only receive their pro rata shares. The amount due Gordon, the seizing creditor, and which was exigible in cash on the day of sale, reduced to its pro rata share, exceeded four hundred dollars; the costs of proceedings amounting to $3,469 75, making, together, a sum larger by two hundred dollars than the amount it is in proof, Swan, the agent of Branner & Co., tendered in cash, as all the money he had to pay, to wit: thirty-six hundred dollars. The amount of costs is run up by the sheriff's commissions being cast upon the amount of the bid, which we think he would have been entitled to had Branner & Co. complied with their bid.

The grounds upon which the plaintiffs declined paying the interest coupons due and presented by Ludling and Stubbs, we think, is not tenable. It was not necessary that they should have been protested before payment was demanded. 5 An. 724. 13 An. 136. 5 An. 61. The purchaser was

clearly bound to pay any bona fide holder the portion of the debt due him, upon the proper evidence of the claim beig presented.

It is in proof that Swan, the agent of Branner & Co., and one of the parties purchasing, admitted the bonds presented were genuine; that he made no question of the ownership or agency of those who presented them and demanded payment of the coupons due and held by them. It admits of no doubt, we conclude, that the plaintiffs failed to comply with the conditions of the sale, and that it was the duty of the sheriff to proceed as he did, to re-offer the property for sale on the same day.

We find several bills of exception in the record, which we do not deem it important, in the decision of this case, to revert to.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be affirmed, the plaintiffs and appellants to pay costs in both Courts.